1

                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
                          EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )  Case No. 1:14-cr-124
         Plaintiff,          )  Youngstown, Ohio
                             )  Thursday, April 2, 2015
    vs.                      )  10:29 a.m.
                             )
BRETT L. BENSON,             )
                             )
         Defendant.          )

                    TRANSCRIPT OF PROCEEDINGS
           BEFORE THE HONORABLE BENITA Y. PEARSON
                 UNITED STATES DISTRICT JUDGE

                          SENTENCING

APPEARANCES:

For the Government:
        Office of the U.S. Attorney
        Northern District of Ohio
        By:  Matthew B. Kall, Esq.
        Suite 400
        801 Superior Avenue, West
        Cleveland, Ohio  44113
        (216) 622-3915
        matthew.b.kall@usdoj.gov

                    Mary L. Uphold, RDR, CRR
     Thomas D. Lambros Federal Building and U.S. Courthouse
                  125 Market Street, Room 337
                   Youngstown, Ohio  44503-1780
                        (330) 884-7424
                Mary_Uphold@ohnd.uscourts.gov

        Proceedings recorded by mechanical stenography;
    transcript produced by computer-aided transcription.

2

1    **APPEARANCES (CONTINUED):**

2    **For the Defendant:**
        Mariela F. Serrano, Esq.
3        9 State Milford Building
        5530 State Road
4        Cleveland, Ohio  44134
        (216) 469-0427
5        tpumar1927@yahoo.com

6
                                  - - -
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

P R O C E E D I N G S

- - -

1  THE CLERK:  The matter before the court is Case

2  Number 1:14-cr-124, the United States of America versus

3  Brett L. Benson.

4  THE COURT:  Good morning, everyone.  You may

5  retake your seats.

6  MS. SERRANO:  Good morning, Your Honor.

7  THE COURT:  Counsel for the United States, will

8  you please introduce yourself for the record?

9  MR. KALL:  Yes.  May it please the court.  Matthew

10 Kall from the U.S. Attorney's Office for the government.

11 With me is FBI Special Agent Casey Carty.

12 THE COURT:  Welcome to you both.

13 Counsel for Mr. Benson, will you please introduce

14 yourself along with your client for the record?

15 MS. SERRANO:  Yes, Your Honor.  Good morning.  My

16 name is Mariela Serrano.  I am the counsel for Mr. Benson,

17 sitting next to me in court today.

18 THE COURT:  Welcome to you both.

19 MS. SERRANO:  Thank you, Your Honor.

20 THE COURT:  And we have with us a representative

21 from the United States Office of Pretrial Services and

22 Probation.

23 Sir, would you please introduce yourself?

4

1          PROBATION OFFICER:  Good morning, Your Honor.

2    John Riffle with the U.S. Pretrial and Probation Office.

3          THE COURT:  Welcome, Mr. Riffle.  Thank you for

4    being here, and thank you for authoring the presentence

10:30:19  5    investigation report that we will focus on substantially

6    during today's sentencing hearing.

7          Mr. Benson, this hearing has been scheduled to

8    allow me to impose sentence upon you following your plea of

9    guilty to Count 1, the charge of bank robbery brought in the

10:30:34  10    indictment brought against you.

11          In preparation for today's sentencing hearing, I

12    have reviewed the final presentence report.  I've also

13    reviewed again the plea agreement, the charging document.

14    And I appreciate Ms. Serrano's filing of a motion on behalf

10:30:50  15    of Mr. Benson.  And I also have received a letter authored

16    by the parents of Mr. Benson.  I've reviewed all of those

17    things.

18          Mr. Kall, can you think of anything that I haven't

19    mentioned that I should have reviewed in preparation?

10:31:03  20          MR. KALL:  No, Your Honor.

21          THE COURT:  Ms. Serrano, have you anything in

22    mind?

23          MS. SERRANO:  No, Your Honor.

24          THE COURT:  Let me focus all of our attention

10:31:10  25    first on the final presentence investigation report.  And

5

1        when I say "final," I am speaking of a report that was last

2        revised on March 9th, 2015.  As we know in this case, there

3        was a preplea/PSR, what we call an earlier-issued version,

4        limited version, but I'm not talking about that one.  I'm

10:31:35    5        talking about the full report that was revised on the 9th of

6        March, 2015.

7             Mr. Kall, the addendum to that report, it's page

8        37, tells me that the United States filed no objections with

9        the probation office.

10:31:51   10             Is that true, sir?

11             MR. KALL:  Yes, Your Honor.

12             THE COURT:  Ms. Serrano, it tells me that you made

13        some suggestions for changes.  Those were made.  Are there

14        any other suggestions for changes you'd like me to entertain

10:32:01   15        today?

16             MS. SERRANO:  Yes, Your Honor.  If I can refer the

17        court to page 30 of the presentence investigation report,

18        item number 106, that notes pending charges dated February

19        14th, 2014, for rape, for threat of.  That was pursuant to

10:32:24   20        an investigation, and no charges have been filed in that

21        case.

22             THE COURT:  Thank you.

23             Mr. Riffle, have you been able to confirm what the

24        status is of paragraph 106, pending charge?

10:32:38   25             PROBATION OFFICER:  Your Honor, right before the

6

1    hearing today, Mr. Kall pulled up, and I witnessed it,

2    pulled up the Lorain County Common Pleas Court docket and

3    Elyria City Municipal, and neither showed charges were

4    filed, which would have been the two districts, the two

10:32:56    5    courts that would have received the charges.

6              THE COURT:  Okay.  And based on your experience,

7    Mr. Riffle, this is an allegation made February 14, 2014.

8    We're a year beyond that.  We're in March of 2015.  In your

9    experience, if charges were to have been filed, do you

10:33:17   10    believe you would see it on the docket of either by now?

11             PROBATION OFFICER:  Yes, Your Honor, I agree with

12    that statement.

13             THE COURT:  Thank you, sir.

14             Any objection to any part of that response,

10:33:25   15    Mr. Kall?

16             MR. KALL:  No, Your Honor.

17             THE COURT:  Ms. Serrano, I will ask Mr. Riffle to

18    strike paragraph 106 from the report.

19             Mr. Riffle, because this is such a lengthy report,

10:33:39   20    what you might do is just remove that text so you don't have

21    to renumber every paragraph that follows, and just indicate

22    "Removed per order of the court," so that you can go from

23    106 to 107.  If you don't mind the renumbering, and at the

24    end of this hearing, if the renumbering doesn't cause a

10:34:00   25    problem, feel free to renumber it.  But it wouldn't upset me

7

1  if you just lifted out the subtopic heading "Pending

2  Charges" and all of that text, and in that place just put

3  "Text deleted by order of the court," and then just go on to

4  paragraph 107.

10:34:19  5          PROBATION OFFICER:  Yes, Your Honor.  Thank you.

6          THE COURT:  Certainly.

7          Ms. Serrano --

8          MS. SERRANO:  Yes, Your Honor.

9          THE COURT:  -- any other adjustments that you'd

10:34:23  10  like to recommend?

11          MS. SERRANO:  No, Your Honor, I don't see any

12  others in the report that need to be brought to the court's

13  attention.  Thank you.

14          THE COURT:  Thank you for that.

10:34:30  15          Let me tell counsel, I am not going to go through

16  every paragraph of this report with you.  I have certain

17  parts in mind, because we've all reviewed it in advance, but

18  if there is another paragraph, like 106 or any other

19  paragraph, that you want me to talk about, just ask and I'll

10:34:47  20  take it up with you.

21          So the next place I'd like you to go is page 7.

22  Under the subtopic heading "Adjustment for Acceptance of

23  Responsibility" is paragraph 23.  And that paragraph says,

24  "On the 21st of January, 2015, the following handwritten,

10:35:08  25  signed and unedited statement regarding the defendant's

8

1    actions in this case was received."

2            And then, Mr. Benson, there is a statement that

3    begins, "Honorable Judge Pearson," and it ends with your

4    signature, "Brett Lee Benson," and it is dated November 19,

10:35:27  5    2014.

6            Sir, have you had a chance to review what's

7    written there in paragraph 23?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Is that indeed your statement to the

10:35:35 10    court?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  Thank you.

13            Now, the next place I'd like to draw your

14    attention is the very next page, page 8.  At the top is the

10:35:45 15    subtopic heading "Offense Level Computation."  And on page

16    8, and it also continues onto page 9, is the offense level

17    computation for the offense for which Mr. Benson has

18    admitted guilt, but also the offenses for which he's

19    stipulated having committed by way of the factual basis in

10:36:15 20    the plea agreement.

21            And I questioned Mr. Riffle about the way in which

22    the computation was developed, because I hadn't seen it done

23    this way before.  And I asked Mr. Riffle, "How is it that

24    you complete the computation by including the second bank

10:36:33 25    robbery?"  Because we know Mr. Benson did rob two banks, and

9

1    that he also made a bomb threat to the Elyria School System.

2    And he directed me to Section 1B1.2, subpart (c) of the

3    Sentencing Guidelines.

4            And if you notice at paragraph 24, it says the

10:36:56   5    2014 guidelines are used.  Paragraph 25 explains why we're

6    using the November 1, 2014 guidelines.  I find, taken

7    together, both are accurate.

8            So when I look at paragraph (c) of 1B1.2, and it

9    says, "A plea agreement (written or made orally on the

10:37:14  10    record) containing a stipulation that specifically

11    establishes the commission of additional offenses shall be

12    treated as if the defendant had been convicted of additional

13    counts charging those offenses," and there is no objection

14    to this, so perhaps counsel was better informed than the

10:37:33  15    court on this score.

16            But having been advised by Mr. Riffle and having

17    read that section, I find that the computation is correct in

18    its completeness by including not only the bank robbery of

19    the Talmer Bank, which is Count 1, but the bank robbery

10:37:50  20    revealed in Count 2, and also the bomb threat.

21            Mrs. Serrano, do you have any objection to this?

22            MS. SERRANO:  No, Your Honor.  I did discuss this

23    with Mr. Riffle when I received the presentence

24    investigation report, and he noted to me the section that

10:38:07  25    you have just delineated on the record.  The outcome,

10

1    however, is the same as we anticipated pursuant to the plea

2    agreement in regards to level 32, which is the level upon

3    which he begins for the offense that he is before the court,

4    minus the three levels which we anticipate the court may

10:38:33  5    give him today, leaving the total offense level down to

6    level 29 and Criminal History VI.  So the outcome would be

7    the same pursuant to the fact that he has been determined

8    under the report to be a career offender.

9                THE COURT:  Thank you.

10:38:50  10                MS. SERRANO:  And that would be -- that is how I

11    discussed this with Mr. Riffle.

12                THE COURT:  Thank you.  I appreciate that.  And

13    you're a little bit ahead of me, but I agree.  But it's also

14    important to the court to make sure that although when the

10:39:04  15    Chapter 4 enhancement is applied, that that which comes

16    before it is accurate.  And it sounds as if you, I and

17    Mr. Riffle are on the same page, so let's include Mr. Kall.

18                Sir, any response at all?  There is no objection

19    from the government.

10:39:19  20                MR. KALL:  We do not object.  We believe it is

21    properly calculated.

22                THE COURT:  Let me ask you, if you don't mind,

23    Mrs. Serrano has gone forward and left me to the place where

24    I believe I can next go to the Chapter 4 enhancement and

10:39:34  25    then acceptance.

11

1          Do you have any objection at all to the paragraphs

2    under the computation section that precede paragraph 51?

3          MR. KALL:  We do not, Your Honor.

4          THE COURT:  Mrs. Serrano, am I correct in

10:39:46  5    believing that you do not either?

6          MS. SERRANO:  No, Your Honor.  And just for the

7    record, had Mr. Benson not been a career offender, this

8    would have been an issue, which we would have addressed in

9    terms of objections.  But since it wasn't, we did not.

10:39:59 10          THE COURT:  Thank you.

11          May I keep you on your feet to start with you

12    regarding the Chapter 4 enhancement?  You've alluded to it,

13    but I'd like us to make a clear record.

14          Paragraph 51 regards career offender status.  And

10:40:15 15    I think it's correctly identified there, two offenses, that

16    being the burglary in 1996, which is captured at paragraph

17    77, and then also the burglary in 2005 -- pardon me,

18    attempted burglary in 2005, which is captured in 81, are

19    appropriate predicates for the career offender status, that

10:40:42 20    meaning two prior offenses of either violent crimes or

21    drug-related offenses, and the fact that at the commission

22    of the instant offense, the bank robbery of Talmer Bank,

23    that Mr. Benson was 18 or older.

24          Any objection to the application of the career

10:40:57 25    offender status?

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

12

1          MS. SERRANO:  No, Your Honor.  Pursuant to the

2     report and my review of Mr. Benson's criminal history, he

3     does fall within the enhancement provision under the

4     guidelines.

10:41:16  5          THE COURT:  Thank you, Counselor.

6          For the United States, your position?

7          MR. KALL:  We also believe he is properly

8     classified as a career offender, Your Honor, and we agree

9     with the presentence report.

10:41:26 10          THE COURT:  Thank you.

11          Mr. Kall, if I may keep you on your feet to next

12     talk about acceptance of responsibility.  I know that the

13     plea agreement anticipated, based upon Mr. Benson's posture

14     up until that time, that you would ask for the third level.

10:41:41 15     I would like to know if you are still of that mind.  And if

16     you don't mind, I'd appreciate your impressions regarding

17     paragraph 52 as well.

18          MR. KALL:  Certainly, Your Honor.  This case was

19     charged in approximately the late spring of 2014.  Shortly

10:41:55 20     thereafter, started having extensive discussions with

21     defense counsel about resolving this case.  From the

22     beginning, the defendant, through his counsel, represented

23     to the court that he would accept and admit responsibility

24     for his actions.

10:42:12 25          Based on that, the government never had to

1    undertake any kind of preparation for trial, preparation for

2    a suppression hearing or anything of the sort.  Any of the

3    delays in the case were due to extensive negotiations for

4    preparation of a preplea/presentence report and no fault of

10:42:34  5    the defendant.

6                So we do believe that the defendant is entitled to

7    a two-level reduction for acceptance, and we do move the

8    court for the additional third level for saving the

9    government time from preparing for trial.

10:42:47  10               THE COURT:  Thank you, sir.  Mr. Kall, I grant the

11    government's motion for the third level for acceptance of

12    responsibility.  And I do find, Mr. Benson, that you are

13    also deserving of the first two levels.  So I downwards

14    reduce the 32 by three levels, leaving you at paragraph 54's

10:43:07  15    total offense level of 29.

16               Any objection to that, Mrs. Serrano?

17               MS. SERRANO:  No, Your Honor.

18               THE COURT:  Mr. Kall?

19               MR. KALL:  No, Your Honor.

10:43:15  20               THE COURT:  I think we know that a career offender

21    requires that Mr. Benson's criminal history category be

22    Category VI, but why don't we go forward through the

23    criminal history section.  And again, this is one of those

24    opportunities when I'm not going to stop at each paragraph,

10:43:34  25    but rather, I am going to go directly to the summation,

14

1    which is on paragraph 28.  And there are some paragraphs

2    regarding criminal conduct after page 28, one of which we've

3    already addressed on the record.  And if you'd like me to

4    take up any others, just speak to me about them.

10:43:53  5          But on page 28, starting under the subtopic

6    heading "Criminal History Computation," paragraph 94 tells

7    us that Mr. Benson's criminal history score is 17.  And that

8    includes the appropriate discount given for 4A1.1(c),

9    meaning that only certain counts -- you are only given one

10:44:16  10   point up to four times; otherwise, you could have gotten

11   eight additional points.  And I checked, Mr. Riffle,

12   needlessly, but nonetheless, it's my due diligence, and I

13   agree with paragraph 94.

14          And because Mr. Benson committed the instant

10:44:32  15   offenses while under court supervision as described in

16   paragraph 95, two additional levels were added -- pardon me,

17   two additional points, making his criminal history points

18   score 19, and that's reflected at paragraph 96.

19          Then paragraph 97 sums it up by again referring to

10:44:52  20   those two predicate offenses we addressed earlier, and

21   acknowledging that Mr. Benson's criminal history score is a

22   Criminal Category VI.  And I remark that it was a VI before

23   career offender adjustment, but because of career offender

24   adjustment, it is also a Category VI.

10:45:16  25          Any objection to any part of that computation,

15

1    Mr. Kall?

2              MR. KALL:  No, Your Honor.

3              THE COURT:  Mrs. Serrano?

4              MS. SERRANO:  No, Your Honor.

10:45:24   5              THE COURT:  Counselors, can we agree then that for

6    the purposes of your allocution, you should consider the

7    advisory guidelines range as recommending to the court that

8    I look at the intersection of offense level 29, at Criminal

9    History Category VI, and that that recommends to the court a

10:45:43 10    low end of incarceration of 151 months, and a high end of

11   188 months?

12              Mr. Benson, that's a recommendation.  It's not

13   mandatory.  But I'm legally obligated to start there and to

14   disagree with it, move on by going below it or above it, of

10:46:04 15    course never exceeding the statutory maximum, which is 240

16   months, or 20 years.

17              You understand that, don't you, sir?

18              THE DEFENDANT:  Yes, ma'am.

19              THE COURT:  Mr. Kall, any objection to the

10:46:15 20    recommendation of 151 to 188 months?

21              MR. KALL:  No, Your Honor.

22              THE COURT:  Mrs. Serrano?

23              MS. SERRANO:  No, Your Honor.

24              THE COURT:  Counselors, anything else you'd have

10:46:23 25    me do before you allocute?

16

1          MR. KALL:  Not on behalf of the government, Your

2     Honor.

3          MS. SERRANO:  Not on behalf of the defense, Your

4     Honor.

10:46:33  5          THE COURT:  So the order, Mr. Benson, will be that

6     I'll hear Mr. Kall's allocution on behalf of the United

7     States.

8          And I'll ask you, Mr. Kall, to assure me that

9     you've notified the victims, including the Elyria School

10:46:47  10     System, Dollar Bank and Talmer Bank, and that, to the extent

11     you care to do so, you speak for them, because I do not

12     believe anyone representing any victim is here.  I'm

13     correct, aren't I?

14          MR. KALL:  That is correct, Your Honor.

10:47:00  15          THE COURT:  And then after your allocution, I will

16     hear you, Mrs. Serrano.

17          MS. SERRANO:  Thank you, Your Honor.

18          THE COURT:  And then Mr. Benson.  It is certainly

19     your right.  You legally have the right to speak to me if

10:47:10  20     you care to.  I've read what you've written.  But before I

21     impose sentence, I will certainly hear what else you'd like

22     to say.

23          THE DEFENDANT:  Thank you very much, Your Honor.

24          THE COURT:  Mr. Kall, when you're ready, I'm

10:47:20  25     ready.

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

1          MR. KALL:  Thank you, Your Honor.  This is a very

2    difficult case on a number of levels.  Obviously, the nature

3    and circumstances of the offenses are serious.  While the

4    defendant has pled guilty to one bank robbery, he admitted

10:47:35  5    in his factual basis to committing an additional bank

6    robbery.  And also, at the time of committing one of the

7    bank robberies, calling in a bomb threat in order to try and

8    distract law enforcement officers in the course of it.

9          All of the victims have been notified pursuant to

10:47:54  10    the victim notification system that the government has in

11    place.  All have been notified about the date and time of

12    court proceedings and have been given an opportunity to

13    submit notification statements or victim impact statements

14    if they wished to, but we have not received any from them.

10:48:11  15          The aggravating circumstances of the offenses are

16    obvious.  The number of robberies involved, and the fact

17    that not only did defendant commit the bank robbery, but he

18    disrupted the activities of, you know, a large part of an

19    entire city at the time that he committed one of them.

10:48:31  20    Calling in the bomb threat caused a large portion of the

21    police department in Elyria to respond to the high school.

22    The high school was evacuated.  They had to go next door to

23    a middle school.  And, you know, it impacted, obviously, the

24    activities of the school for the entire day, and the

10:48:48  25    detective bureau for a substantial period of time.

18

1          I guess the only mitigating factors I would say as

2      it relates to it, compared to other bank robberies that I

3      have seen, in the defendant's favor, he didn't possess a

4      weapon and he didn't even brandish a toy weapon to try and

10:49:07  5      instill that fear in any of the tellers.  So as it relates

6      to the nature and circumstances of the offenses, while it's

7      obviously serious, it is not the most serious bank robbery

8      that possibly could have been committed.

9          When you look at the nature and circumstances --

10:49:24 10      or excuse me, the personal history and characteristics of

11      the defendant, it is a very poor picture given his long

12      criminal history and his long involvement with the criminal

13      justice system going back to prior to the time that he

14      turned 18.

10:49:43 15          When you read through it, a few things jumped out

16      at me and I think are appropriate for the court to consider.

17      Number one, a pattern seems to emerge that defendant is

18      committing most of these offenses for property gain.  He's

19      never worked as an adult, apparently.  And as he has

10:50:03 20      admitted, he's had serious substance abuse issues.  So it is

21      very clear that at least the majority of these offenses were

22      committed for personal gain to feed a drug habit.  Many of

23      them are very serious.  He is breaking into people's houses

24      to take things.  And burglary creates a clear panic and

10:50:25 25      victimizes numerous innocent individuals.  So they are very

19

1    serious offenses.

2            I also am drawn to the fact that on two different

3    prior occasions, the defendant has been found with a

4    firearm.  While there was none involved in this present

10:50:40    5    offense, that is something that I think speaks to the risk

6    that the defendant poses to society and his respect for the

7    law.

8            The defendant's other previous offenses, he has

9    one conviction from, I believe it was 1995 or 1996 for

10:50:59    10   aggravated trafficking in drugs.  Other than that, and a

11   drug possession crime since then -- excuse me, a drug abuse

12   crime in 2004, to his credit, it does not appear that he is

13   selling drugs to support himself over the last part of his

14   adult life.  So that is a small factor in his favor.

10:51:24    15          As it relates to deterrence, no previous sentences

16   deterred the defendant, and he's had several substantial

17   sentences.  So we believe that a lengthy sentence is

18   necessary to protect the public.  For the better part of his

19   adult life, when he has been free from prison, he has

10:51:43    20   amassed a large number of criminal history points, and it

21   seems that it occurs in a very short period of time.  As

22   soon as he gets out, and even though he is under supervision

23   from various courts, he seems to be unable to control

24   himself.

10:52:02    25          One of the aggravating factors in this case that

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

20

1    got him two extra criminal history points was the fact that

2    he was on post-release control at the time of the offense.

3    And I am not sure which way this piece of evidence cuts, but

4    I will disclose it for the court.  One of the things that we

10:52:20  5    were able to find and use as evidence in this case is the

6    defendant was on location monitoring at the time he

7    committed this offense.  He was wearing a GPS monitor when

8    he robbed the bank.

9         It shows how stupid the offense was, how motivated

10:52:37  10   he was by his drug use, and how unconcerned he was with the

11   consequences.  I think it speaks to the defendant's state of

12   mind at the time.  He couldn't control himself at the time

13   that he was doing this and, you know, really wasn't giving

14   too much thought to the consequences of his actions, which

10:52:57  15   clearly were going to land him, if not in state court, in

16   federal court, for doing what he did.

17        So those are the factors that we would ask the

18   court to consider in this case.

19        The defendant's other personal history and

10:53:13  20   characteristics paint an unusual picture.  He comes from --

21   while he was adopted, he appears to come from a very loving

22   and supportive home.  It's my understanding from talking to

23   Ms. Serrano that his parents are here today to support him.

24   And it appears that they have tried to do their best with

10:53:26  25   him raising him.

1          So, you know, the defendant clearly has a family

2     network behind him that, for whatever reason, didn't get him

3     off to the right track as an adult, falling in with the

4     wrong crowd, and his clear drug abuse problems are clearly

10:53:46  5     what has led him here today.

6          We would ask the court to consider all of those

7     factors, therefore, and impose a sentence within the

8     advisory guidelines range pursuant to the plea agreement.

9          THE COURT:  Thank you, Mr. Kall.

10:53:57  10         Mrs. Serrano, I will hear you now.

11         MS. SERRANO:  Thank you, Your Honor.  The personal

12    history and characteristics of Mr. Benson speak for

13    themselves in terms of his criminal history.  It is true

14    that he is not proud of his criminal history, and his

10:54:19  15    criminal history enhanced him to a career offender status,

16    but, Your Honor, not everything about Mr. Benson is

17    delineated in his criminal history.  Yes, it is bad.  No

18    question.  But Mr. Benson, as a person, I found him to be

19    well mannered, well spoken, highly excitable due to the

10:54:50  20    nature of his maladies in that he suffers from depression,

21    high anxiety, other medical issues, but he has always been

22    courteous and very caring as far as his parents are

23    concerned.

24         I have spoken to his parents -- his mother,

10:55:07  25    rather, on several occasions.  Mr. Benson speaks very highly

1    of them.  His behavior, that doesn't denote that, because of

2    his history.  But, in essence, he does care about them.  He

3    does speak very highly of them.

4         He had a traumatized incident while he was in the

10:55:31  5    detention center at the age of 13, I think he was 13 -- 12,

6    13, 14 years old, where he was raped by four individuals

7    while being at the detention center under the protection of

8    the government, if you will.  He was deeply traumatized by

9    this.  Even his mother, in her letter to the court, which I

10:55:53  10   have a copy, noted that.  His behavior would have probably

11   been corrected had he not been so traumatized by that

12   incident.  His whole life I think deviated as a result of

13   that.

14        His drug issue had a major -- played a major role

10:56:17  15   in most of the offenses upon which he has been convicted.

16   The offense that he is before the court today for

17   sentencing, although it is not a drug-related offense, it

18   is -- was, rather, motivated by his drug usage.

19        As the prosecutor indicated, it was a stupid

10:56:35  20   offense.  He was being monitored with an ankle bracelet.  He

21   went into these two banks with the purpose of monetary gain,

22   but mostly because of his drug habit.  He had a deep heroin

23   habit, which he used to self-medicate his personal medical

24   issues.

10:57:02  25        He suffers from high anxiety.  He suffers from

23

1    depression.  He has a gunshot in his lower back upon which

2    he has muscle deterioration, one of the reasons why he's

3    asking the court to recommend to the Bureau of Prisons that

4    he be sent to a medical facility.

10:57:22    5    Your Honor, he's not proud of his record.  He has

6    noted that to me on various occasions.  From the beginning,

7    from the first day I saw him, he has admitted responsibility

8    for his actions in this case.  He noted to me that he had

9    confessed straight out.  He has noted that to the

10:57:43    10    government, through me, on various occasions.  There's never

11    been any issue in regards to his not accepting

12    responsibility for his actions here.

13    It is very difficult for an individual with his

14    criminal history to find employment.  He has obtained a GED,

10:58:03    15    he has obtained vocational training, he has taken some

16    college courses while he's been incarcerated, all of that to

17    better himself.  But then when he gets out, because of his

18    criminal history, and attempts to find employment, it's

19    basically a losing battle.  And because of that, he has

10:58:26    20    become increasingly demoralized, falling prey to

21    embarrassment, frustration, and that further continued use

22    of drugs.

23    Mr. Benson should have had

24    psychological/psychiatric treatment after his rape in the

10:58:44    25    detention center.  He never has received treatment for

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

24

1    anything in regards to that.  I believe that had that been

2    the case, perhaps he would have turned his life around and

3    he would have been a better person in terms of his behavior

4    in society.  But he never did get that treatment.  His

5    parents acknowledged that to me.  It was regretful.  Perhaps

6    they felt they could handle it, and they were not able to.

7           At no point did he ever get anyone to sit down

8    with him and try to resolve the issues, the frustrations,

9    that inner anger that was within him.  No one ever did that.

10   And so he was just spiralling downwards and downwards and

11   downwards, and now he is facing this court on a very serious

12   charge.  He has never denied responsibility, Your Honor.  He

13   has always admitted that.

14          He looks like a hardened criminal.  All these

15   tattoos and his history makes you think that he is a

16   hardened criminal.  That's only on paper.  In person, I have

17   never found him to be such a person.  I have never found him

18   to be discriminatory towards me.  I have never found him to

19   be disrespectful towards me.  I have never found him to be

20   disrespectful to the government, to anyone in regards to the

21   case that's pending before this court.

22          I know, Your Honor, that as a career offender, he

23   is facing much more serious penalties than if he had not had

24   the career offender status.  And he is aware of that

25   himself.  He does not excuse his conduct.  He just wants the

1    court to understand his conduct, the reason what prompted

2    him to be the person that he is today.

3         I would ask the court to take that into

4    consideration and consider Mr. Benson for a sentence on the

11:00:56    5    low end of the guidelines.  I believe, Your Honor, that

6    there is some redeeming quality in him.  I know it's not

7    visible on paper, but there is some redeeming quality in

8    him.  His parents would not be here -- would not be backing

9    him if it weren't there.  It's just that he has never been

11:01:18   10    able to project that.

11         In state court, there is no psychiatric or

12    psychological treatment for offenders that I'm aware of when

13    they leave the system.  In federal court, I think that may

14    be available to him upon his release from prison while he's

11:01:39   15    on supervision after he completes his sentence.  That might

16    help him deal with his demons and his problems in regards to

17    what happened to him so many years ago.

18         I would like the court to take that into

19    consideration and to note the last page of my memorandum,

11:02:01   20    which is the conclusion and delineates the reasons that

21    we're asking the court to find that Mr. Benson has

22    characteristics, Your Honor, that might for the court to --

23    that might be there for the court to consider.

24         And we are also asking that he be assigned to an

11:02:34   25    FMC that is a medical facility.  And he has three that I

26

1  have delineated for the court in order of preference.

2          Thank you, Your Honor.

3          THE COURT:  Thank you, Mrs. Serrano.

4          Mr. Benson, now is your opportunity to say

11:02:49  5  whatever you'd like me to consider before I impose sentence,

6  sir.

7          THE DEFENDANT:  Your Honor, I come to you to --

8  you know, I don't excuse any of my actions.  I was wrong.  I

9  made a serious mistake, a bad mistake.  I wish I could

11:03:02  10  take --

11          THE COURT:  Which one?

12          THE DEFENDANT:  I wish I could take March 24th

13  back.

14          THE COURT:  Thank you, Marshal.

11:03:07  15          THE DEFENDANT:  I wish I could take that day back.

16  I would have never done this.

17          I want to apologize to everybody at Elyria High

18  School that was involved for that, and also the police

19  department.  I'm ashamed for what I did.  I apologize to my

11:03:23  20  family.

21          Your Honor, my whole life, what you see on paper,

22  it looks bad, tattoos look bad.  Your Honor, I've been in

23  prison most of my life.  Okay.  I started this at a young

24  age.  I spent over half my life in prison.

11:03:39  25          While I've been in prison, I had to struggle,

27

okay, with different situations.  When I was released, I

never dealt with them situations.  I come to the street.  I

get back with the different people that I had left.  When I

get back with them, my persuasion towards doing the wrong

11:04:02  thing always goes that way.  My intentions are good when I

get out.  I have a drug problem.  I like drugs.  I needed

help.  I couldn't get it.  I tried to get it.  It just

didn't work.

I don't excuse none of my actions.  I am wrong for

11:04:22  everything I've done.  I want to apologize to you, Your

Honor, and please take into consideration my apologies.

THE COURT:  Let me ask you.  If you care to

respond, I'd like to hear it.  Because what you've said, I

know.  I know you robbed the bank.  I mean, that's a matter

11:04:38  of record.  I don't mind telling you that your confession

doesn't mean a whole lot, because bank robberies are usually

the most easily solvable crimes.  You are filmed, and you

were wearing a GPS device.  So confessing doesn't gain you

much.

11:04:53  THE DEFENDANT:  Right.

THE COURT:  So when you tell me you like drugs,

what I still don't know is when I can trust you back in

society.  I like candy --

THE DEFENDANT:  Right.

11:05:01  THE COURT:  -- but I know I can't have candy for

28

1    breakfast, lunch and dinner.

2              THE DEFENDANT:  Right.

3              THE COURT:  What are you going to do about this

4    drug situation?

11:05:09  5              THE DEFENDANT:  Your Honor, since I've been locked

6    up, I went through different methods to help myself and

7    better myself, through different ways.  I've been -- I've

8    wrote a few different places to get help and get literature

9    about, you know, different psych medications, different --

11:05:23  10   I've talked with mental health.  They've got me back on

11   medication.  I see a counselor on a regular basis.

12              Your Honor, I don't want that life anymore.  I

13   really don't.  I am in my 40s.  My whole life I've been

14   locked up.  I've never had a chance to enjoy life.  And when

11:05:41  15   I did get that chance, I messed it up.  I don't want that

16   life anymore, Your Honor.

17              That day when I had the GPS on, when I woke up

18   that morning, I was so sick I couldn't even walk.  I would

19   have never went in no bank.  That's not me, you know.  I

11:05:59  20   fought myself because I let myself go down that road of

21   drugs that put me in that situation, Your Honor.

22              I am very sorry.  And, Your Honor, I can't excuse

23   anything that I've done.  Like you said, you know that I

24   robbed the bank, so, I mean, there's no discrepancy there,

11:06:22  25   Your Honor.

29

1        I'm just, you know -- more or less, my parents, I

2   feel I hurt my parents very bad with this, because they're

3   elderly, okay, and they need me out there, and I chose to go

4   a different route, and now they are by themselves and they

11:06:36   5   don't have me out there to help them.

6        I threw my life away, and I want to get some of it

7   back when I can.  I am going to do something with my life

8   when I get out.  I've made preparations to do something with

9   my life.  I've got a lot of different things that I can do,

11:06:54   10   but I just didn't have the chance to really do it.  And I'm

11   going to put forth more effort when I get out to do those

12   things to better my life and to be a better person in

13   society.

14        THE COURT:  I certainly hope so, because even if I

11:07:08   15   were to impose the statutory maximum, there's a good chance

16   you'd outlive that sentence, and at some point you will

17   regain society, and what you do at that time is going to be

18   up to you.

19        Your best documented history is your criminal

11:07:24   20   history.  You've been in prison 21 of the 23 years after

21   your 18th birthday.  That's amazing.  I'm not even sure how

22   else to describe it.

23        So you're right when you say you threw your life

24   away.  I know what Mrs. Serrano has spoken about, the

11:07:42   25   traumatizing rape that you endured, and I'm sorry about

1    that.  But if you want to have any chance at life at all,

2    you have to push past that.  I mean, it can't be that the

3    justification for your bad behavior is that traumatizing

4    event, or your drug addiction.  At some point you have to

11:08:01   5    decide you are somebody.

6            At 41 years old, not to have any record of work,

7    of caring for family members -- in fact, while I know from

8    the letters that your parents wrote and their appearance

9    here, they love you, I also know you disappointed them, not

11:08:22   10    just with this last act, but again and again and again.

11            And I know it may seem somewhat insensitive, and

12    perhaps even a little ironic, but at least on this day, for

13    the next few years, and I am going to tell you how many in a

14    while, they're not going to have to worry about you.

11:08:38   15    Federal prison isn't state prison.  It's not a camp.  It

16    won't be easy.  It's no place that you will enjoy.

17            But your parents won't worry.  They won't worry

18    that you're going to turn up dead because you're

19    drug-addicted or overdosed.  They are not going to have to

11:08:54   20    worry about some of the traumatization that I believe you

21    endured while in a juvenile facility.  And they are going to

22    know that you are someplace doing what you've said on the

23    record, trying to make yourself better and fit to be a part

24    of society when that day comes.

11:09:08   25            I can't find much redeeming value in what I've

31

1    read about you or even what I've heard about you.  I don't

2    mind admitting that to you.  There's just little place to

3    start.  All I can hope is that you really do want to be free

4    of your addiction, and to be a law-abiding member of

11:09:28  5    society.  And that choice will be up to you.  I hope it will

6    start while you're in prison.

7         And I can assure you of this, that after you've

8    served your term of prison, you will be on supervised

9    release to this court.  I don't know what will happen to the

11:09:45  10    court control you were under under state court, if that will

11    also continue, but what won't happen is you'll leave federal

12    prison and return to violating the law, because the first

13    time you do that, your supervision will be revoked and

14    you'll be returned for as long as the law allows.

11:10:01  15         And you'll expect that, I'm sure, right?

16         THE DEFENDANT:  Yes, ma'am.

17         THE COURT:  Please listen.  I've considered what

18    I've heard, and I've tried to match what I've heard and been

19    able to develop with my own thinking about your case,

11:10:13  20    Mr. Benson, to the 3553(a) factors.

21         And those are the factors that require that I look

22    at the nature and circumstances of the offense, the bank

23    robberies, the bomb threats made to the Elyria High School.

24    And also your history and characteristics, things that I

11:10:34  25    know about you, including your family history, much of which

32

I've spoken about.  The assault upon you as a juvenile.  The medical condition; I understand it to be neuropathy.  And in addition to that, the mental conditions of paranoia, anxiety and depression that affect you and many in society who manage to avoid robbing banks and do many of the other things you do, by the way.

And I believe that you have obtained a GED, but you've not worked as an adult, at least not appreciably, not in a way that is justified by any written record.

And then I look at the needs for punishment.  I look at the need -- other needs for sentencing you, to deter you.  I am not sure -- I am not at all sure that any sentence I impose is going to deter you unless you change, and I'm not sure that you're capable of changing.  I know you said you want to, so I'll leave that to you.

I need to protect the public.  You are ungovernable.  You've been persistent in your law breaking.  You've made threats.  Even though you didn't have a weapon, you told the bank tellers that you did by the note you wrote.  The offenses you committed are serious.

And I don't mind the way you look.  I've been served coffee in coffeehouses by people as tattooed as you.  That's not your problem.  Your problem is not the outside, your problem is the inside.  And once you realize that and you start to fix it, you'll do just fine.

33

1          I will consider what Mrs. Serrano has asked, and I

2     do that under the auspices of trying to allow you to improve

3     your conduct and condition.  And she's asked that when I

4     consider the 151- to 188-month range, that I stay within the

5     range and ideally give you a sentence at the low end, and I

6     will.  I've calculated each.  The low end is about 12 1/2

7     years without any credit for time served or good time, and

8     the 188 months is about 15 1/2 years.  And I've thought,

9     will three years really make the difference?  I don't know

10    that they will.

11         What I've also thought about is after imposing a

12    151-month term of incarceration, I'll give you three years

13    of supervision.  So that sort of makes up the difference.

14    But it's three years out instead of three years in, three

15    years under the watchful eye of a federal probation officer

16    and a federal judge.

17         And I hope that by then you'll be less of a

18    threat.  You'll be in your 50s, even if you earn credit for

19    good time and you're given credit for time served.  And I

20    hope that by then you will have learned that your life is

21    worth living and that you don't want to live it on the

22    inside, you want to live it on the outside.  And you know

23    what the rules are, the boundaries that we all appreciate

24    and abide by.

25         So for those reasons, please listen as I impose

34

1   the following sentence:  I hereby commit you to the custody

2   of the United States Attorney General, Mr. Benson, to serve

3   a term of incarceration of 151 months.

4           Upon your release from prison, I order that you

5   serve a term of supervised release for three years.

6           Within 72 hours, Mr. Benson, after you leave

7   prison, you must report to the nearest probation -- federal

8   probation officer.  And sometimes what happens is, because

9   the Bureau of Prisons will transition you out, rarely is a

10  prisoner just released on the last day of incarceration to

11  the street, but rather, a few months before, no more than a

12  year before, but about a year, six months before, you'll be

13  transitioned out into a halfway house so that you begin to

14  make your own rules, get up at a certain time, go out, get a

15  job, start making friends in the community, associate with

16  an NA group or an AA group, start making your way.

17          Sometimes the probation officers will come to the

18  halfway house to meet with you.  And that will satisfy your

19  72-hour meeting with the probation officer.  But if no

20  officer comes to meet with you to start that relationship,

21  you are legally obligated, within 72 hours of your last day

22  of imprisonment, even if it's at the halfway house, to make

23  your way to a federal probation officer to start the

24  conversation, "I'm back.  I'm Brett Benson.  I'm ready to be

25  law-abiding.  I need your help."  That's the conversation

35

1   starter.

2            Do you understand?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  The very first violation you may

11:15:26  5   commit is not meeting that 72-hour obligation.  Do you

6   understand that?

7            THE DEFENDANT:  Correct, Your Honor.

8            THE COURT:  Know that federal probation officers

9   are not there to set you up, to get you in trouble.  They'll

11:15:38  10  do what they believe you need to have done, but if you need

11  more help than your officer recognizes, ask for it.  It's

12  confidential.  It's provided by the government.  You don't

13  have to worry about being embarrassed.  Ask your officer.

14  Because the last thing you want is to stand before a federal

11:15:56  15  judge and say, "I needed more help than I was given."  All

16  right?

17            THE DEFENDANT:  Yes, Your Honor.

18            THE COURT:  Sir, because I believe that you won't

19  have the financial ability to do it, and there is a

11:16:08  20  restitution order, I am waiving the imposition of a fine,

21  but I am imposing the $100 special assessment.  So you owe

22  the federal courts $100.  It's due until it's paid in full.

23            Do you understand that, sir?

24            THE DEFENDANT:  Yes, Your Honor.

11:16:23  25            THE COURT:  And I don't want your money, Mom and

36

1    Dad, I only want Mr. Benson's money.  And I'm willing to

2    wait for it.  So you can pay towards it while you're

3    incarcerated.  If you haven't paid it in full then, and

4    you'll work in prison, so you may very well have, start

11:16:40  5    paying it while you're on supervision.  So it's your

6    obligation to pay the court $100.

7         Do you understand that?

8         THE DEFENDANT:  Yes, Your Honor.

9         THE COURT:  Sir, you owe restitution to the

11:16:49  10   victims.  You owe in total $3,497.  $2,634 of that is owed

11   to Talmer Bank & Trust.  It's to be paid to the Clerk of

12   Court.  You're always to make a payment to the Federal Clerk

13   of Court.  All you have to do, Mr. Benson, is give a check

14   or a money order, or if you walk in and you want to provide

11:17:15  15   cash, your name and your case number.

16        But for the record, I am going to state the

17   address to which the Clerk of Court will mail that payment.

18   But you never send it to that address, because if you pay

19   them directly, I won't know about it.  So you pay the Clerk

11:17:32  20   of Court.  I trust that the Clerk of Court will pay the bank

21   and the Elyria School District, and I'll speak about that in

22   a moment.

23        Does that make sense?

24        THE DEFENDANT:  Your Honor, when I'm in prison,

11:17:44  25   say I'm working, won't they take some of my money out?  Can

37

1    I pay it then while I'm in prison?

2              THE COURT:  Absolutely.

3              THE DEFENDANT:  All right.

4              THE COURT:  And I'm going to speak about that too.

11:17:51  5    So the Prison Financial Inmate Responsibility Program will

6    take money from what you earn and pay it to Talmer Bank

7    until the amount is paid in full, and that amount is $2,634.

8    The address is 111 Antioch Drive, Elyria, Ohio 44035.  And

9    it's regarding the March 19, 2014 bank robbery.

11:18:21  10              $762.60, Mr. Benson, is owed to the City of

11    Elyria's Auditor's Office, and its address is 131 Court

12    Street, 44035, and that's regarding restitution to Elyria

13    Police Department for their efforts in investigating the

14    bomb threat on March 24th, 2014, at the high school, and

11:18:49  15    also the bank robbery of Dollar Bank on that day.

16              And then the last piece is $100.40, payable to

17    Elyria City School District.  And that's to be paid to the

18    attention of the Treasurer's Office, 42101 Griswold Road,

19    Elyria, Ohio 44035.

11:19:12  20              All of these are to be paid through the United

21    States District Clerk of Court.

22              Now, as you have already indicated, while you're

23    in prison and working, you'll pay 25 percent of your gross

24    monthly income every month through the Federal Bureau of

11:19:32  25    Prisons' Inmate Financial Responsibility Program.  And once

38

1    you leave prison, starting no later than 60 days, so you'll

2    have about two months to get your situation in order, and

3    then you'll start paying again once you're outside of

4    prison.  And at that time you'll pay 10 percent of your

11:19:50    5    gross monthly income towards restitution.  And you'll

6    continue making that payment until your restitution is paid

7    in full.

8         Do you understand, sir?

9         THE DEFENDANT:  Yes, Your Honor.

11:20:00    10        THE COURT:  Mr. Benson, I think you're employable,

11    and you will become employed, but when you first become

12    employed, it might be difficult for you to pay as much as 10

13    percent of your gross monthly income towards restitution.

14    Talk it over with your probation officer, because the last

11:20:19    15    thing you want to do is to miss a payment or to pay less

16    without first having gotten the permission of your probation

17    officer.

18         But if you talk it over with your probation

19    officer and it's decided that maybe you pay 5 percent of

11:20:33    20    your gross monthly income, or some fixed amount, $20 a month

21    until you can pay more, I will accept that.  But what I

22    won't accept is you paying less or not paying at all of your

23    own will without talking it over with probation and getting

24    your probation officer's agreement.

11:20:50    25         Do you understand?

39

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  Okay.  Sir, please remember this,

3     especially while you are on this three-year term of

4     supervision, but hopefully for the rest of your life, that

11:21:02   5     you shall never commit another federal, state or local

6     crime.  And that includes possessing any illegal or

7     controlled substances, any illegal or controlled substances,

8     whether it's a prescribed drug that's not prescribed for

9     you, or heroin, marijuana, cocaine, anything of that sort.

11:21:20  10     No possession at all.

11          Do you understand, sir?

12          THE DEFENDANT:  Yes, on this, I do.

13          THE COURT:  Sir, you are going to be drug tested.

14     You are going to have a minimum of three drug tests, but

11:21:30  15     you'll have more than that.  The first is likely to come

16     within the first 15 days after you're released.  During that

17     first 72-hour appointment we spoke about, you could be drug

18     tested then.  So it doesn't even have to be as far out as 15

19     days.  But know that you'll be drug tested often.  And your

11:21:49  20     goal is to always make sure that your drug tests are

21     negative, showing no signs of illegal drugs or any other

22     contraband.

23          Do you understand, Mr. Benson?

24          THE DEFENDANT:  Your Honor, say -- I'm kind of

11:22:00  25     confused on something that you said.

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

40

1            THE COURT:  Sure, ask me.

2            THE DEFENDANT:  Say -- you said something about

3    like a halfway house, and that you're talking about I'm

4    going to get urine tested and contact a PO.  I don't

11:22:13   5    understand.  If I go to a halfway house, I've got to

6    contact -- I don't -- I have to contact a PO and get a urine

7    test right then?  I mean --

8            THE COURT:  Seventy-two hours before you end that

9    halfway house stay.  Because you'll still be under the

11:22:27  10    control of the Bureau of Prisons.  They'll transition you

11    from living in the facility into a halfway house, and then

12    you'll know when your last day of living in the halfway

13    house is.

14            THE DEFENDANT:  Right.

11:22:40  15            THE COURT:  So three days before that, if you

16    haven't already met with a probation officer and been told

17    who it is that you'll report to during this three-year

18    period, then you must go to the nearest federal probation

19    office.

11:22:56  20            And, for instance, if you are back in Ohio, in the

21    Northern District, maybe back in Lorain, the nearest

22    courthouse would be the Cleveland Courthouse.  You are

23    welcome back in the Youngstown Courthouse.  We all have

24    probation offices.  You can go to Akron.  You can go to

11:23:14  25    Toledo.

1               But if for some reason, maybe you have been living

2       in a facility in a place outside of Ohio, like you recommend

3       that I ask the Bureau of Prisons to house you in Kentucky,

4       you ask that I recommend Massachusetts or North Carolina,

11:23:31  5     maybe you decide to stay in North Carolina.  You go to the

6       nearest federal probation office to the place where you're

7       living within three days after you're released.  Okay?

8               So if you are in transition, if you are in a

9       halfway house, I'd go within three days of them telling you

11:23:50  10    you're heading out, especially if you don't know where

11      you're going to live.

12              THE DEFENDANT:  Right.

13              THE COURT:  Because if you go three days before or

14      within three days of being released, you can talk to your

11:24:00  15    probation officer about where you can live.

16              THE DEFENDANT:  If -- say, for instance, just so I

17      know, say like in a situation I don't have a car or a

18      license, okay, and I can't get to the PO's office, but I

19      contact -- I call, I contact, make verbal contact and let

11:24:16  20    them know what's going on --

21              THE COURT:  Yes.

22              THE DEFENDANT:  -- is that fine?

23              THE COURT:  Ask the probation officer that

24      question.

11:24:22  25             THE DEFENDANT:  Ah.

42

1          THE COURT:  "Is this okay?"

2          What I suspect the officer is going to say is,

3     "I'll come to you," or "That facility, that halfway house

4     has bus tokens.  I am going to ask that you be given a bus

11:24:38  5     token so you can come here."

6          But ask the question:  "Does this qualify as that

7     meeting that I'm supposed to have within 72 hours of being

8     released?"

9          Good questions.  Can you think of any others right

11:24:50  10    now?

11         THE DEFENDANT:  No, Your Honor.

12         THE COURT:  Sir, you are going to have a lot of

13    time and you are going to think of others, because

14    especially when you are free and sober, free of drugs and

11:24:59  15    sober, your mind is going to work far better than it ever

16    has, and you are going to have all sorts of questions.  So

17    you should contact the probation officer often and

18    frequently to make sure that you get all of your questions

19    answered.

11:25:10  20         Because you must have one meeting, that first

21    meeting within 72 hours of your release, doesn't mean that

22    you can only have one.  It means that you must have one, but

23    you can have six or seven.

24         THE DEFENDANT:  Right.

11:25:21  25         THE COURT:  So ask the questions.  You may not

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

43

1    remember as clearly in 12 1/2 years or so what you and I

2    spoke about today even.

3             THE DEFENDANT:  I won't forget.

4             THE COURT:  Okay.  But if you do, just ask.

11:25:34   5             THE DEFENDANT:  Right.

6             THE COURT:  Understood?

7             THE DEFENDANT:  Yes, ma'am.

8             THE COURT:  Anything else before I go on?

9             THE DEFENDANT:  No, Your Honor.

11:25:38  10             THE COURT:  Okay.  Sir, I don't think you'll

11    forget this either, but I want to make sure that you know.

12    You shall never ever possess a firearm, destructive device

13    or any dangerous weapon.  That includes even a single

14    bullet.  All right?

11:25:54  15             THE DEFENDANT:  Yes.

16             THE COURT:  Possession is possession.  Possession

17    means holding, touching.  Possession also means within your

18    reach.  So it shouldn't be under the seat.  Like you said,

19    you'll leave prison, you won't have a driver's license.  Any

11:26:07  20    license you may have now will have expired by then.  Don't

21    you agree?

22             THE DEFENDANT:  Correct.

23             THE COURT:  So you won't have a ride.  At least

24    you won't be able to drive yourself.  If someone offers you

11:26:16  25    a ride, even if you don't know for certainty, for sure, if

1    you believe that person has a gun in the car or some sort of

2    dangerous weapon or destructive device, don't get in the

3    car, because you don't want to have to explain to your

4    probation officer or to the court why the gun in the glove

11:26:33  5    box closest to you wasn't in your possession, or why the gun

6    under the seat wasn't in your possession.

7            Also, you are going to have to figure out where

8    you live.  You are not going to have as many options as you

9    would like, but the one option you can't take up is to live

11:26:50  10   with somebody who has weapons or other contraband.  Because

11   you don't want to have to explain that those drugs aren't

12   yours, that weapon isn't yours.  Make sense?

13           THE DEFENDANT:  Correct, Your Honor.

14           THE COURT:  Okay.  Sir, you're to share your

11:27:03  15   financial information with the probation office as

16   requested.  It will be needed to decide if you're able to

17   continue paying and at what rate you continue paying

18   restitution, or for other purposes the probation officer

19   has.  So when asked to provide financial information, you

11:27:19  20   shall provide it.  Understand?

21           THE DEFENDANT:  Yes, Your Honor.

22           THE COURT:  And you shall not open any new credit

23   lines, no credit cards or anything like that without first

24   getting the permission of your probation officer.

11:27:30  25           THE DEFENDANT:  Correct, Your Honor.

1     THE COURT:  Do you understand that, sir?

2     THE DEFENDANT:  Yes, Your Honor.

3     THE COURT:  Sir, in addition to these random drug

4 tests, you are also going to be put into an approved program

11:27:40 5 for drug treatment.  It can be an outpatient or an inpatient

6 program.  It can involve group therapy or individual

7 therapy.  You and your probation officer will work together

8 to decide what's best to make sure that you remain free of

9 drugs and clean and sober.

11:27:56 10     Do you understand that, sir?

11     THE DEFENDANT:  Can I start that while I'm in

12 prison?  I mean, do they have drug programs I can start

13 while I'm there instead of waiting until I get out?

14     THE COURT:  I certainly hope so.  I hope that you

11:28:07 15 will be given drug treatment while in prison, and I am going

16 to recommend that.  So this is after you're released.

17 Because my experience tells me that while you're in prison,

18 while I'm not naive enough to think that you won't have

19 access to drugs, I know that you will, so there will be a

11:28:21 20 prison drug treatment program that you have to qualify for

21 by your good behavior, by your willingness to really

22 participate.  So you do that.  That's up to you.

23     But when you leave prison, what I am ordering is

24 that you be given another opportunity for further drug

11:28:38 25 treatment.  Because you are going to have a lot more

46

1    temptation outside of prison than inside of prison.  So I

2    want to make sure that the sobriety you obtain in prison,

3    you can keep.

4         So you'll have both.  So make sure that you

11:28:53  5    qualify for whatever is offered that will help you while

6    you're in prison.

7         THE DEFENDANT:  Thank you.

8         THE COURT:  Do you understand?

9         THE DEFENDANT:  Yes, Your Honor.

11:29:03 10    THE COURT:  Now, this is important.  I hope that

11    you don't do it in prison if you're drug tested, but when

12    you're out of prison, never do anything to interfere with

13    these random drug tests.  Don't pretend you can't make

14    urine, "Oh, I don't have to go.  I don't have to go."  You

11:29:19 15    can go.  Drink some water and go.  Don't present somebody

16    else's urine.  And don't fail to show up.

17         Because if you fail a drug test three times or if

18    you avoid taking a drug test, just don't show up, automatic

19    revocation.  And I already told you what happens if I

11:29:35 20    revoke, you go back to prison.

21         While I don't want you to use drugs, if you're

22    using, I'd rather know about it.  I'd rather you fail the

23    test and we decide how to treat that.  Because I guarantee

24    you this, if you don't allow yourself to be helped, you fail

11:29:50 25    a test or you -- you fail a test and you pretend you're not

47

1      using.  Like some people test positive for cocaine and they

2      say, "I'm not."  You test positive for cocaine, you are

3      using cocaine.  So admit it, or you avoid taking the test,

4      all reasons for revocation.  All right?

11:30:08   5      THE DEFENDANT:  Yes, Your Honor.

6      THE COURT:  You are also going to undergo mental

7      health evaluation and treatment.  Mrs. Serrano spoke about a

8      problem that she believes you have that stems from that

9      traumatic event at the Buckeye Institution.  While you're in

11:30:20  10      prison, you should have access to mental health treatment.

11      If it's not made available to you, ask for it.  But you'll

12      certainly have it during this three-year term after you're

13      released.  Understood?

14      THE DEFENDANT:  Yes, Your Honor.  Thank you.

11:30:33  15      THE COURT:  Sir, when your probation officer asks

16      you to do it, you must provide a DNA sample.

17      Do you understand?

18      THE DEFENDANT:  Yes, Your Honor.

19      THE COURT:  Now, regarding restitution, I've

11:30:41  20      already spoken about the amounts you must pay, or at least

21      the percentages while in prison, and then initially after

22      prison, that can be changed with the agreement of your

23      probation officer.

24      But know this:  If you become the beneficiary of

11:30:56  25      some windfall, if you receive an inheritance, if you win the

48

1    lottery, you get a bunch of money that you didn't expect, or

2    even money that you did expect, right off the top is your

3    restitution, and the rest is for you to live on.  Make

4    sense?

11:31:13    5          THE DEFENDANT:  Yes, Your Honor.  Thank you.

6          THE COURT:  Sir, nothing about the orders I've

7    placed will stop the government from seeking to collect what

8    you owe.  So nothing I've said, even if you're paying, if

9    they want to put a lien on property that you're fortunate

11:31:30   10    enough to buy, they still can do that.  All right?

11          THE DEFENDANT:  Yes, Your Honor.

12          THE COURT:  Okay.  Now, in addition to all else

13    that I've said you are going to endure during your three

14    years, I want you to know that because of your drug history,

11:31:43   15    I am going to allow the probation officer to search you, and

16    if contraband is found, to seize it, all without a warrant.

17          So if the probation officer develops a reasonable

18    suspicion that you are in possession of contraband -- what

19    is that, remember, guns, ammunition, dangerous weapon,

11:32:02   20    destructive device, firearms, any of that -- it can search

21    your body, search the place where you live, the place where

22    you're working, the car that you drive or are typically

23    driven in, a computer that you use if it's reasonable to

24    believe that you're using the computer in violation of law.

11:32:22   25    And if something in violation of your supervision is found,

MARY L. UPHOLD, RDR, CRR          (330) 884-7424

49

1    it can be seized.

2         Now, please know this:  Nothing will ever be done

3    to embarrass you.  If you are working at that coffeehouse I

4    told you I could envision you working at, don't announce,

11:32:39  5    "It's my probation officer searching me."  Nothing will be

6    done to out you in that way.  Just be respectful.  Cooperate

7    to the extent necessary.  Allow the search to take place and

8    we'll take up the results once they're known.  All right?

9         THE DEFENDANT:  Yes.

11:32:51  10         THE COURT:  Mrs. Serrano, I am going to recommend

11   that Mr. Benson be evaluated for housing at a medical

12   facility.  I don't know in depth his medical condition, so I

13   will ask that he be evaluated, and if he is found to be

14   qualified for housing at a medical facility, that preference

11:33:13  15   be given to those places that you and Mr. Benson have asked

16   me to recommend.  And they are Lexington, Kentucky, Devens

17   in Massachusetts, and Butner in North Carolina.

18         MS. SERRANO:  Thank you, Your Honor.

19         THE COURT:  Certainly.

11:33:32  20         Mr. Riffle, will you please tell me what I've

21   missed, or if I haven't missed it, what I've failed to

22   adequately describe?

23         PROBATION OFFICER:  I don't believe you missed

24   anything, Your Honor.  But I would at this point recommend

11:33:46  25   that the court also recommend in the judgment that the BOP

1    place him in the mental health and the substance abuse

2    treatment while he's serving his time.

3          THE COURT:  Thank you.  I will make that

4    recommendation now orally, adopting the recommendation made

11:34:04  5    by Probation Officer Riffle, and I'll also place it in

6    writing.

7          Mrs. Serrano, I know that you know this, and

8    you've already spoken to Mr. Benson about it is my

9    suspicion, and, Mr. Benson, I tell you this now on the

11:34:19  10   record, you entered a written plea agreement.  And while

11   you've waived many of your appellate rights, you did not

12   waive them all.  If you believe you have any viable theory,

13   any reason to appeal left, please talk it over with

14   Mrs. Serrano, because you only have 14 days after the date I

11:34:38  15   put in writing this sentence to file your notice of appeal.

16          If you file a notice of appeal, no matter how good

17   the theory of appeal, outside of that 14-day period, you may

18   very well have waived forever all of your appellate rights.

19          Do you understand?

11:34:55  20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Mrs. Serrano, I appreciate you taking

22   up the representation of Mr. Benson.  Will you continue it

23   only as far as you and he would like, but especially to talk

24   with him about any viable theories of appeal; and, if he

11:35:10  25   believes he has one, or even if he believes he might come up

51

1    with something, to timely file that notice for him inside of

2    14 days?

3              MS. SERRANO:  I will, Your Honor.

4              THE COURT:  I am going to come back to you after

11:35:20  5    I've spoken to Mr. Kall about two things.  One is I expect,

6    at least based upon the plea agreement, another motion, that

7    being to dismiss the remaining two counts.

8              MR. KALL:  We do so move, Your Honor, to dismiss

9    Counts 2 and 3.

11:35:35  10              THE COURT:  I grant that motion.

11              And I do ask you specifically to delineate any

12    objections you have to the sentence I've imposed; and

13    secondly, any objections to any part of the proceedings as

14    to Mr. Benson.

11:35:49  15              MR. KALL:  There are no objections on behalf of

16    the government, Your Honor.  Thank you.

17              THE COURT:  Thank you, Mr. Kall.

18              Ms. Serrano, the same two questions for you.  The

19    first is, any objections to the sentence as imposed?  The

11:36:02  20    second is, any objections to any part of the proceedings as

21    to Mr. Benson?

22              MS. SERRANO:  No, Your Honor, no as to both

23    questions.

24              I do have one point that I want a clarification.

11:36:16  25    I don't have anything in my notes regarding credit for time

52

1    served.  Mr. Benson has been incarcerated since his arrest

2    in March of last year, and I would ask the court to give him

3    credit for the one year he's been incarcerated.

4         THE COURT:  Well, I can't do it that way.  I

11:36:32  5    mentioned it earlier when I spoke to Mr. Benson about 12 1/2

6    years less any good time, which I hope he earns, and I will

7    state clearly for the record that I will recommend to the

8    Bureau of Prisons that you be given credit for time served.

9    The bureau does that calculation.  That's why I resist

11:36:52  10    Mrs. Serrano's request to make it one year.  It will be what

11    the Bureau of Prisons decides it shall be.

12         Make sense?

13         THE DEFENDANT:  Yeah.

14         THE COURT:  And they're pretty good.  They're

11:37:01  15    accurate.  So they will look at credit -- they'll look at

16    time you've served in a federal facility.  My belief is

17    because you committed a state crime, you might have been in

18    state custody for a day or so or more, I just don't know.

19    And the Bureau of Prisons may not give you credit for time

11:37:17  20    served in an Elyria Municipal Jail, for instance.  But once

21    in federal custody, that's where they'll start the

22    calculation.

23         Make sense?

24         THE DEFENDANT:  Yeah.

11:37:27  25         THE COURT:  All right.  So that motion is granted,

53

1    and I will make that in writing as well.

2              MS. SERRANO:  Thank you, Your Honor.

3              THE COURT:  Anything else?

4              MS. SERRANO:  No, Your Honor.

11:37:34  5    THE COURT:  All right.  Mr. Benson, the part of

6    the sentence that cuts in one way that I don't really

7    appreciate is that if things go as well for you as you and I

8    would like, I may not even know about it, because I just

9    will never hear of you or about you or from you again, and

11:37:58  10   that's my wish, that you are going to go to prison, you are

11   going to rehabilitate yourself, you are going to take

12   advantage of every program, you are going to come out in

13   three years, and your probation officer is going to know

14   your voice because you are always going to be on the phone

11:38:13  15   or across from his or her desk asking, "How do I do this?

16   How do I do this?  How do I do this?"  And you won't ever be

17   in this court or any other place again.  That's my wish for

18   you.  I think that's the best outcome.

19              Nothing but the best, sir, do I wish for you.

11:38:30  20   THE DEFENDANT:  Thank you, Your Honor.

21              THE COURT:  This hearing is adjourned.

22              THE CLERK:  All rise.

23         (Proceedings concluded at 11:38 a.m.)

24

25

MARY L. UPHOLD, RDR, CRR        (330) 884-7424

54

1                    C E R T I F I C A T E

2

3        I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled

5   matter.

6

7           /s/ Mary L. Uphold          October 14, 2015
            Mary L. Uphold, RDR, CRR     Date
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25